Brockenbrough, J.
I am of opinion, that the power of appointment conferred on the widow, by the fifth clause of the testator Thomas Mitchell’s will, extended only to the slaves and other personal property, and did not extend to the land, comprised within that clause; that on the death of the widow, the personal subject *471 should have been distributed according to the statute of distributions, among all the lineal descendants of the testator; and that the land ought to fall into the residaum, and be divided among the testator’s five sons. Therefore, there is no error in so much of this interlocutory decree of the chancellor, as declares that the plaintiffs are entitled to an equal share of the personal subject according to the prayer of their bill; but the decree is erroneous, in declaring, that the plaintiffs are entitled to an equal share of the real estate. And, as the widow renounced the provision made for her by the will, and as the allotment of her dower and distributive share of the personalty, may have lessened the provision made by the will for the residuary devisees and legatees, the rents and profits of the real estate, and the profits and interest of the personal subject, comprised within the fifth clause of the will, which accrued during the life of the widow, (unless they constituted a part of the dower and distributive share assigned to her), should be applied, as far as they will go, towards compensating any loss which may have been sustained by the residuary devisees and legatees; arid, if they require it, the court of chancery should direct an account to be taken of those rents and profits, from the death of the testator to the death of the widow, and direct them to be divided among the residuary legatees and devisees.
Carr, J.
I think the decree clearly wrong in declaring the plaintiffs entitled to a share of the land mentioned in the fifth clause of the will. That is expressly given to the widow for life; and the remainder, being undisposed of, falls into the residuum. Then the question is as to the personalty comprised in the clause. As to this, my opinion is, that the decree is right. The renunciation of the widow rendered inoperative every devise and bequest made for her benefit; she could not *472 claim against the will, and under it: but her renunciation could not affect the rights of others under the will. The bequest to her of the slaves &c. for life, with a power at her death to dispose of them among the lineal descendants of the testator, as she might think proper, made her a trustee for those descendants ; and no act of hers, or refusal to act, could disappoint that trust. Notwithstanding her renunciation, then, I consider that she might have exercised the power of appointment, and having neglected to do so, equity will interpose and execute the trust. In doing this, it will take the statute of distributions for its guide, where it is necessary. Here, the eight children or their descendants were, clearly, the persons meant by the words “lineal descendants.” The cases which settle these principles, are. numerous; Knight v. Yarbrough, Gilm. 27. Pierson v. Garnet, 2 Bro. C. C. 38. 226. Malim v. Keighley, 2 Ves. jr. 333. 529. and many others. In the last case, the ruling principle is thus expressed by the master of the rolls, and approved by lord Loughborough on appeal : “ Wherever a person gives property, and points out the object, and the way in which it shall go, that does create a trust, unless he shews clearly, that his desire expressed, is to be controlled by the party, and that he shall have an option to defeat it.” Here, the objects were clear; “among” the testator’s “lineal descendants.” The trustee could not under the word “ among,” have left out any one of them. The words “ as she thinks proper,” relate to the proportions in which she might give. “My lineal descendants” are narrower words than “ my relations,” which have often been decided to be certain enough. In Pierson v. Garnet, the chancellor says,—“ If the word used had been relations, it would go to those within the statute of distributions; but under these words [meaning “ among the descendants of C.”] it will go only to such relations as are descendants, which is still more limited.” The way' *473 in which the property shall go, is pointed out with equal clearness.
I think, therefore, that the decree should be reversed, and the case sent back, to be proceeded in according to the principles of this opinion. The chancellor, I observe, has, among other things, directed an account to be taken of the profits both of the land and slaves mentioned in the fifth clause; and that the commissioner, in such account, shall distinguish between the profits which accrued before, and those which accrued after, the death of the wife. It will be remarked, that the plaintiffs by their bill, claimed no interest in the subjects of the fifth clause, prior to the death of the widow; and could not, because they claim those subjects only after her death. It is not, therefore, perceived for what purpose this account was ordered; but as this is an appeal from an interlocutory decree, and this court has often said, that in such cases, it would only correct what the court below had actually done amiss, it would, perhaps be premature to give, at this time, any opinion as to the propriety of this order; or the proper destination of these profits, when they shall be ascertained; especially, as the report itself will probably develope facts materially influencing such opinion.
Cabell, J.
I think the chancellor’s decree correct, so far as it relates to the personal subject mentioned in the fifth clause of the will; but that he erred as to the real estate which was the subject of that clause. The land sunk into the residuum, and must pass, under the residuary clause, to the five sons.
But in this case, an important question arises, which, although it must have frequently arisen in other cases, has never, so far as I am informed, been judicially decided. The widow having renounced the provision made for her by the will of her husband, and having claimed that part of the estate to which the statute, in *474 such case, entitles her, the other arrangements of the will may, in consequence thereof, have been materially broken in upon and disappointed. What, under such circumstances, is to be done with that part of the estate devised and bequeathed to the wife, but which she has renounced? Shall it be equally divided between all the heirs and distributees, according to the statutes of descents and distributions, as if the testator had died intestate ? I think not. The legislature could not have intended that the renunciation of the wife should disappoint the will of her husband, farther than is absolutely necessary for the enforcement of her rights. In all other respects, it ought to be executed, as nearly as possible according to the wishes and intentions of the testator. For this purpose, the property renounced by the widow should be subject, in the first place, as far as necessary, to the indemnification of those legatees or devisees, whose devises or legacies may have been impaired or lessened by the effect of the renunciation of the widow. In this case, a life estate only was given to the wife by the will. I am, therefore, of opinion, that the profits of that estate, real and personal (except such part thereof as may have been assigned to her in consequence of her renunciation) shall be applied to the indemnification of such of the devisees and legatees as may have sustained loss, and that all proper accounts should be directed for that purpose.
I am of opinion, that the decree should be reversed with costs, so far as it is inconsistent with these principles, and the cause remanded, to be proceeded in to a final decree.
Brooke, J. concurred.
Tucker, P.
I have no doubt, that the lineal descendants of the testator are entitled equally, under the clause of the will in question. But there is a view of *475 the case, which does not appear to have been taken in the court below, and which seems to me essential for the fair adjustment of the rights of the parties.
By our law, a widow is entitled to renounce the provision made for her by her husband’s will, and betake herself to her dower and distributive share of his estate. Where she does this, she must of necessity break up the provisions of the will, unless the testator has taken the precaution to make other dispositions in anticipation of such a step. Such a precaution has not been observed here. A provision is made for the wife, which she has renounced, and the testator has not provided for that event. What then is the effect of this renunciation i It throws the rights of the wife upon the other parts of the estate, and relieves that which was burdened with the provision for her. What then does equity require ? Assuredly, that the interest devised to her should be given to the party or parties, whoever they may be, who are disappointed, of their legacies by this election, and overthrow of the will of the testator, to compensate their loss as far as it wilbgo.
I have not been able to find a case exactly in point, but the english cases upon election are, to say the least, very strongly analogous. There, as well as here, it is a rule, that no person shall claim an interest under a will, and at the same time defeat its provisions, where it is in his power to do so. In such cases, he is put to his election. If he takes under the will, he must acquiesce in all its provisions, though it should even have disposed of his own property to a third person. If, on the other hand, he renounces the will, he loses all claim to the legacies bequeathed to him. And what is to become of them ? I apprehend they are always to be applied, to make satisfaction to the disappointed devisee. It is true, that some difference of opinion has been entertained, as to the extent to which the party electing will forfeit his rights under the will; some judges holding *476 that “ the equity of the court is to sequester the devised *" » ~ interest quousque, until satisfaction is made to the disappointed deviseeand others holding, that the whole is forfeited, and that it is not sufficient that the party electing should “ give up sufficient to compensate those who are disappointed.” Lady Cavan v. Pulteney, 2 Ves. jr. 544. 560. Green v. Green, 19 Id. 664. But it is obvious, that this difference does not respect the destination or disposition of the fund, but only the extent of the surrender or forfeiture of right under the will. In either event, I apprehend, “ the court lays hold of what is devised, and makes compensation out of that to the disappointed party.” Accordingly, in Whistler v. Webster, 2 Ves. jr. 367. 372. the court declared “ that no one claiming a legacy under the will shall have any part of the fund devised, to the disappointment of those to whom it is given by the will. If they will have this fund,” said the chancellor, “ I will take away their legacies, which shall go in compensation, as far as they will.” These principles appear to me peculiarly proper in those cases where a widow bréales the will of her husband. - When she does so, whatever is given her by the will, should go in compensation to those out of whose interests her legal provision is carved.
If this be so, then it will be proper to direct an inquiry on whom has fallen the burden of the widow’s dower right and distributive share, in order that the rents and profits, during her life, of the subject devised to her, may be decreed in compensation to those who have been disappointed, in proportion to their respective losses by her election. From the opinion expressed by the chancellor, it does not appear whether this was intended by him; though the direction that the commissioner should discriminate between the rents and profits accruing in the lifetime of the widow, and those subsequent to her death, would seem to indicate such a design. However, the decree being interlocutory, *477 cannot be pronounced erroneous for this omission. But . . .... , . , . , , , it is erroneous m this, that the remainder m the lands on which the testator resided, does not pass to the lineal descendants generally, a,s the chancellor seemed to think, but sinks into the residuum devised to the testator’s live sons. The rents and profits of that land during the widow’s life, if it was not assigned to her in part of her dower, together with the rents and profits of the personalty during her life, ought to be applied in compensation to the relief of those whose devises and legacies may have been trenched upon by the assignment of the widow’s dower and distributive share; and the personalty bequeathed to the wife for life, with remainder to the lineal descendants of the testator, must be distributed among them all, and does not fall into the residuum as was contended by the appellants’ counsel.
Upon the whole, I am willing to concur in reversing the decree so far as it is inconsistent with the foregoing opinion, and to add a direction, that it shall be ascertained, on whom has fallen the burden of the widow’s dower right and distributive share of the testator’s estate, in order to their relief, upon the principles already stated.
Decree
That this court, dissenting from the opinion expressed by the chancellor, that the real estate comprised in the fifth clause of the testator’s will, passed under that clause to the lineal descendants of the testa,tor, and thinking that the remainder of the real subject expectant on the life estate given to the widow, sunk into the residuum, held the decree, in that respect, erroneous : and that this court is further of opinion, that the rents and profits of the real estate during the widow’s life, and the profits of the personal subject also during her life, in the fifth clause mentioned, should be applied, so far as necessary, to compensate any loss sustained by those devisees and legatees, whose devises *478 and legacies had been lessened by the assignment of the widow’s dower and distributive share of the testator’s estate; and that proper inquiries should be instituted as to those matters, by reference to a commissioner, or otherwise, as should seem expedient to the court of chancery. Therefore, decree reversed, with costs to the appellants, and cause remanded, to be pro- ' ceeded in according to the principles here declared.